1

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
                                        22-CR-208(CBA)
 3   UNITED STATES OF AMERICA
                                        United States Courthouse
 4           -against-                  Brooklyn, New York

 5                                       July 27, 2022
                                        9:00 a.m.
 6   QING YU, ANTONY ABREU, YOU
     YOU and ZHE ZHANG,
 7
             Defendants.
 8   ------------------------------x

 9       TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
               BEFORE THE HONORABLE CAROL B. AMON
10             UNITED STATES SENIOR DISTRICT JUDGE

11   APPEARANCES

12   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  DEVON LASH, ESQ.
                                   GABRIEL PARK, ESQ.
15                            Assistant United States Attorneys

16
     For the Defendant:       LAW OFFICE OF ANTHONY CECUTTI
17   Qing Yu                  217 Broadway - Suite 707
                              New York, New York 10007
18                            BY:  ANTHONY CECUTTI, ESQ.
                                    - and -
19                            LAW OFFICES OF JAMES KOUSOUROS
                              260 Madison Avenue - 22nd Floor
20                            New York, New York 10016
                              BY:  JAMES KOUSOUROS, ESQ.
21

22   For the Defendant:       SUSAN GAIL KELLMAN, ESQ.
     Antony Abreu             25 Eighth Avenue
23                            Brooklyn, New York 11217

24

25
```

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

                                                                    2

1    APPEARANCES (CONTINUED)

2    For the Defendant:        MEREDITH STACY HELLER, ESQ.
     You You                   99 Park Avenue - Ph Suite
3                              New York, New York 10016
                                    - and -
4                              LAW OFFICES OF LEVITT & KAIZER
                               40 Fulton Street - 17th Floor
5                              New York, New York 10038
                               BY:  NICHOLAS GREGORY KAIZER, ESQ.
6

7    For the Defendant:        JOEL S. COHEN, P.C.
     Zhe Zhang                 75 Maiden Lane- Suite 607
8                              New York, New York 10013
                               BY:  JOEL S. COHEN, ESQ.
9                                   - and -
                               MEISTER SEELIG & FEIN LLP
10                             125 Park Avenue - 8th Floor
                               New York, New York 10017
11                             BY: HENRY E. MAZUREK, ESQ.
                                   ILANA HARAMATI, ESQ.
12

13   Also Present:            TUO HUANG, INTERPRETER

14

15   Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, CCR
                               Phone:  718-613-2330
16                             Fax:    718-804-2712
                               Email:  LindaDan226@gmail.com
17

18

19   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
20

21                    *    *    *    *    *

22            (In open court.)

23            (Defendants enter the courtroom.)

24            THE COURTROOM DEPUTY:  All rise.

25            Good morning.  United States District Court for the

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                            3

1    Eastern District of New York is now in session.  The Honorable

2    Judge Amon is now presiding.

3              Criminal cause for a status conference on United

4    States versus Yu, et al., Docket Number 22-CR-208.

5              May I have the appearances for the government,

6    please.

7              MS. LASH:  Good morning, Your Honor.  Devon Lash on

8    behalf of the United States with Gabriel Park.

9              THE COURTROOM DEPUTY:  For the defendant Qing Yu?

10             MR. KOUSOUROS:  Good morning, Your Honor.  James

11   Kousouros.  I represent Mr. You.  Mr. You is in the jury box

12   closest to Your Honor.

13             THE COURT:  Okay, thank you.

14             THE COURTROOM DEPUTY:  I also have an interpreter

15   for Mr. You, Tuo Hunag.

16             Is that correct?

17             THE INTERPRETER:  Yes.

18             THE COURTROOM DEPUTY:  And your language is?

19             THE INTERPRETER:  Mandarin Chinese.

20             THE COURTROOM DEPUTY:  Thank you.

21             For the defendant Antony Abreu?

22             MS. KELLMAN:  Good morning, Your Honor.  Susan

23   Kellman for Antony Abreu.

24             THE COURT:  He's the second gentleman there?

25             MS. KELLMAN:  The one in the middle, yes.

PROCEEDINGS                                    4

1          THE COURTROOM DEPUTY:  For the defendant You You?

2          MR. KAIZER:  Nicholas Kaizer, Levitt & Kaizer,

3   appearing on behalf of You You, along with Meredith Heller.

4          MS. HELLER:  Who I believe is being relieved today.

5          MR. KAIZER:  And I'm also appearing on behalf of --

6          THE COURT:  I'm sorry, who's being relieved today?

7          (Court reporter interrupts for clarification.)

8          MS. HELLER:  Meredith Heller on behalf of Mr. You

9   You.  I was CJA, and he has retained counsel.

10         THE COURT:  And that's Mr. Kaizer?

11         MS. HELLER:  And that's Mr. Kaizer.

12         MR. KAIZER:  Along with Mr. Levitt, Judge.

13         THE COURTROOM DEPUTY:  And for the record, Mr. You

14  You is appearing by video today.

15         We are having a technical issue with him speaking to

16  us, however I understand that he can hear us.

17         If so, Mr. You, can you confirm again that you can

18  hear us by putting your thumb up?

19         For the record, Mr. You You has his thumb up.

20         For the defendant Zhe Zhang.

21         MR. MAZUREK:  Good morning, Your Honor.  Henry

22  Mazurek and Ilana Harmati, along with Joel Cohen, on behalf of

23  Mr. Zhang, who is standing in the jury box, the third

24  defendant furthest from the Court.

25         THE COURTROOM DEPUTY:  Thank you.  Everyone, please

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                5

1    be seated.

2              THE COURT:  All right, let me just --

3              Mr. Kaizer, you put in a notice of appearance?

4              MR. KAIZER:  Yes, Judge.

5              THE COURT:  And do you consent to your client

6    viewing these proceedings today by video?

7              MR. KAIZER:  Yes.

8              THE COURT:  Have you had an opportunity to discuss

9    this with your client?

10             MR. KAIZER:  Yes.

11             THE COURT:  And it's acceptable to him?

12             MR. KAIZER:  Yes.

13             THE COURT:  And let me just inquire.

14             Mr. You You, is it true that you no longer want

15   Ms. Heller to represent you and you have, in fact, retained

16   Mr. Kaizer?

17             Just indicate by putting your thumb up.

18             DEFENDANT YOU:  (Indicating.)

19             THE COURT:  Okay.

20             THE COURTROOM DEPUTY:  For the record, Mr. You You

21   has his thumb up.

22             THE COURT:  Okay, thank you.

23             Let me just ask, with respect to Zhang, I know that

24   there are three counsel here.

25             Are any other counsel here as a result of being

PROCEEDINGS                              6

1   learned counsel?

2               MR. MAZUREK:  No, Your Honor, we're all retained.

3               I'm sorry, my name is Henry Mazurek.

4               THE COURT:  Okay.  Thank you.

5               So there are no learned counsel remaining in this

6   case.

7               MR. CECUTTI:  Your Honor, I didn't provide my notice

8   of appearance earlier.  I am learned counsel for Mr. You.

9               (Court reporter interrupts for clarification.)

10              MR. CECUTTI:  Anthony Cecutti.

11              THE COURT:  Well, the government is no longer

12  seeking the death penalty.

13              MR. CECUTTI:  Yes.

14              THE COURT:  Were you CJA?

15              MR. CECUTTI:  Yes.

16              THE COURT:  So you're no longer needed as learned

17  counsel.

18              MR. CECUTTI:  I assumed as much.

19              THE COURT:  Okay, so I'll relieve you.

20              MR. CECUTTI:  Thank you.

21              THE COURT:  But there's no one else who...

22              MR. KAIZER:  Yes, Judge, I'm appearing for Jean

23  Barrett.  I'm learned counsel on behalf of You You.

24              She was CJA and she hasn't been released, but she

25  couldn't make it here today so I'm standing up for her.  So

PROCEEDINGS                              7

1    she asked to be relieved, but I don't think the Court will be

2    continuing.

3              THE COURT:  No, well, she's -- there's no need for

4    learned counsel, so she is relieved.

5              MR. KAIZER:  Correct.

6              THE COURT:  Plus you're retained.

7              MR. KAIZER:  Yes.

8              THE COURT:  Okay.  And I'll relieve Ms. Heller

9    because --

10             MS. HELLER:  Thank you, Your Honor.

11             MR. COHEN:  Your Honor, before we begin, I had asked

12   the interpreter's office yesterday to provide ten headsets for

13   the people in the audience that are unable to understand

14   English, and I would inquire as to whether they could be --

15             THE COURTROOM DEPUTY:  I don't have ten headsets to

16   provide.

17             THE COURT:  Who is speaking?

18             THE COURTROOM DEPUTY:  Your Honor, I don't have ten

19   headsets to provide to the audience.

20             THE COURT:  Was this request brought to your

21   attention?

22             THE COURTROOM DEPUTY:  No, ma'am, it was not, it was

23   brought to the interpreters.

24             THE COURT:  I don't know what happened with the

25   interpreter's office, but I take it they're not available,

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

PROCEEDINGS                          8

1    correct?

2              THE INTERPRETER:  May I approach, Your Honor?

3              THE COURTROOM DEPUTY:  Can I speak?

4              I can have the interpreter, instead of doing

5    simultaneously with the defendant, that he can project each

6    line by line, if you'd like.

7              So as the parties finish one at a time, he'll

8    translate to everyone.

9              THE COURT:  No, but that will take.

10             THE COURTROOM DEPUTY:  Yes, ma'am.

11             THE COURT:  We'll be in this proceeding for two

12   hours if we're going to do that.

13             And I'm sorry, Mr. Cohen, if you have this

14   application in the future, and there's some problem with it

15   working out, you know, alert the Court to it, but I have a

16   very crowded calendar today and I can't wait to have people

17   come up and bring headsets.

18             MR. COHEN:  I think they're here.

19             THE COURT:  Where are they?

20             MR. COHEN:  The interpreter has them.

21             THE COURT:  I'm not seeing them.

22             THE INTERPRETER:  Your Honor, I do have headsets, so

23   it can allow...

24             THE COURT:  Do you have any objection to it?  Can we

25   just...

PROCEEDINGS                      9

1          THE INTERPRETER:  No, I don't have an objection.

2          THE COURT:  All right, well, go ahead, I didn't know

3     that.

4          MR. COHEN:  Your Honor, I apologize for not alerting

5     the Court.  I didn't think that was necessary.

6          THE COURT:  Well, if there's a problem, it's always

7     necessary.  Apparently there's no problem, but, you know.

8          MR. COHEN:  Thank you.

9          THE COURT:  And the headsets, obviously, have to be

10    returned immediately at the end.

11         MR. CECUTTI:  Thank you, Your Honor.

12         THE COURT:  All right, let's proceed.

13         Can the government tell me what the status of the

14    matter is?

15         THE COURTROOM DEPUTY:  I'm sorry, the interpreter is

16    not here to interpret.

17         THE COURT:  Oh, I'm sorry.

18         All right, let's move on.  If the interpreter would

19    return to and continue the interpretation, please.

20         I'd ask the interpreter to return.  That's enough

21    with the headsets.  Let's get back, we have a court proceeding

22    to handle.

23         All right, I appreciate your assistance, but we need

24    to move on, okay.

25         If the government would tell me what the status of

PROCEEDINGS                                           10

1    this case is.

2              MS. LASH:  Certainly, Your Honor.  The government

3    filed a letter on June 29th on the docket nothing that the

4    death penalty would not be sought against the defendants in

5    this case.  I'll move on to the discovery now.

6              There's been two productions in this case so far,

7    including arrest paperwork, search paperwork, post-arrest

8    statements, criminal history.  Every warrant and affidavit

9    that has been issued in this case has been turned over.  We

10   have marked as sensitive.  There is NYPD records,

11   (indiscernible) records referring to the defendants' vehicles

12   and the vehicles used in the murder.

13             As I mentioned at the last conference, surveillance

14   videos, the autopsy records, the 911 calls.  We've also turned

15   over all toll records that were collected in this case.

16   That's more than 20 toll records for various numbers.  Cell

17   site location records.  Certain social media records.  And

18   responsive records from electronic devices.

19             Now as mentioned at the last conference, 35

20   electronic devices were seized pursuant to arrests in this

21   case, including one which was already in the custody -- I'm

22   sorry, not including but in addition to one that was already

23   in the custody of law enforcement.

24             The government has reviewed 22 of those 36 devices

25   thus far.  We've produced responsive records from five

PROCEEDINGS                                    11

1    devices.  Within the next two weeks, we're prepared to produce

2    responsive records from an additional six devices.  We have 11

3    devices that we're prepared to return to certain defendants.

4            So that leaves, Your Honor, 14 devices.  Five of

5    those 14 are currently under review by law enforcement agents

6    in this case, and the remaining nine devices, the government

7    is still trying to access through various techniques by the

8    crime scene examiners at the FBI.

9            There are some -- in addition to those devices,

10   which we will produce a number of responsive records in the

11   next few weeks, as well as full forensic extractions back to

12   the defendants in this case, in addition to those records,

13   future production would include financial records for certain

14   companies and defendants, some additional NYPD records that

15   we've obtained, some additional outstanding social media

16   records, and some medical records.

17           THE COURT:  All right, so the last category,

18   Ms. Lash, you identified the financial records, NYPD, social

19   media, when are those going to be turned over?

20           MS. LASH:  Financial records are slated for the next

21   production, Your Honor, which the government hopes to have out

22   within the next two weeks.

23           The social media records will depend on the agent's

24   review.  There is only one account that is outstanding.  It

25   belongs to one of the defendants in this case, Mr. Zhang.  His

PROCEEDINGS                                        12

1  account, if we were to translate it into pages, is 36,000

2  pages.  So it's quite an undertaking for the agents to review,

3  to find records that are responsive to those.  Although,

4  that's in progress, and we're working diligently to finish it.

5          THE COURT:  When you say "social media," these are

6  like what types of things?

7          MS. LASH:  Instagram specifically, Your Honor.

8          THE COURT:  Instagram?

9          MS. LASH:  Yes.

10          THE COURT:  So he has 36,000 pages of an Instagram

11  account?

12          MS. LASH:  That's right, Your Honor.

13          THE COURT:  So what is the government's application

14  in terms of proceeding here?

15          MS. LASH:  Your Honor, we believe it makes sense

16  to -- separately, after we talk about discover, I'd like to

17  talk about a trial date.  But we do believe it makes sense to

18  set another status conference within two months.  I think at

19  that time we should have a sense of, if anything, what's

20  remaining.

21          It's difficult to confirm to the Court that we'll

22  have this finished within two months, specifically because of

23  those nine devices that we have not been able to access but

24  hope to access.  And, of course, the devices that we have

25  accessed that are still under review, phones vary in size,

PROCEEDINGS                                        13

1    information.  The defendants in this case are bilingual and

2    often are speaking in other languages which require not only

3    case agents to review the phones but interpreters as well.

4              So we'd ask for another 60 days to complete as much

5    of the discovery as we can at that point, and I think we'll be

6    able to give the Court and the defense a report as to what

7    remains and a good time estimate as to how long that will

8    take, if not finished.

9              THE COURT:  Does the government intend to offer plea

10   agreements in this case or not?

11             MS. LASH:  The government is open to discussing a

12   plea with counsel, however, we will -- those will not be the

13   form of a formal written plea agreement.

14             Given the penalty in this case is mandatory life

15   imprisonment, we are not optimistic that we will resolve,

16   which is a perfect segue to our next topic.  We'd like to

17   discuss a trial date.

18             THE COURT:  Okay.

19             MS. LASH:  The government would like to set a trial

20   date now for various reasons, Your Honor.  As you know, the

21   calendar is crowded and, you know, it's better to reserve it

22   sooner rather than later.

23             We've proposed February 2023 to the defense.  The

24   defense attorneys have various conflicts that I'll, you know,

25   allow them to discuss with the Court.

PROCEEDINGS                              14

1          We've proposed that date because the prosecutors in

2     this case have lengthy trials in April and May.  And just

3     knowing the Court's preference to, you know, try to move this

4     as quickly as possible, we wanted to discuss this topic here

5     and try to get on the calendar as soon as we can.

6          THE COURT:  How long would the case take to try, in

7     the government's estimate?

8          MS. LASH:  Your Honor, we're estimating now about

9     three weeks.  With stipulations from the defense, it could cut

10    that time down, you know, five days, but a conservative

11    estimate I think is three weeks.

12         THE COURT:  Victor, what is the calendar?

13         (Pause in the proceedings.)

14         THE COURT:  Well, I can give you a firm trial date

15    of January 4th.

16         MS. LASH:  That works for the government, Your

17    Honor.

18         THE COURT:  There are no other trials scheduled that

19    date, so I think that is a firm date.

20         MR. MAZUREK:  Judge, this is Henry Mazurek on behalf

21    of Zhe Zhang.

22         Your Honor, that date is very difficult for us to

23    meet.  We have a series of trials in this district between now

24    and the end of the year, which is going to make it difficult

25    for us to prepare for a January 4th trial.

PROCEEDINGS                                    15

1          Those include the case United States versus Zottola,

2    which is set to begin August 24th in front of Judge Dearie.

3    It's a six to eight-week murder-for-hire trial.  And then we

4    have two subsequent trials.  One in front of Judge Garaufis,

5    which has been set for a long time, on November 9th in United

6    States versus Daskal, and then December 5th in front of

7    Judge Cogan, United States versus Fletcher.

8          And those cases are going to trial.  They've been

9    set for a very long time, so it would be difficult for us to

10   effectively prepare, given that schedule, by January 4th.

11         THE COURT:  Are you sure all of those cases are

12   going to trial?

13         MR. MAZUREK:  Judge, they are old cases.  They're

14   all 2019, 2018 cases, and have been set for trial for some

15   time.  The Cogan case, for example, the December 5th case, we

16   have a supression hearing today, and we're going to -- it's

17   most likely going to trial.  I don't see it being resolved.

18         THE COURT:  And that's in December?

19         MR. MAZUREK:  December 5th.  And that's going to be

20   a two-week trial, and it's going to lead right up to -- that

21   would be the time when, I would imagine, the government would

22   be producing 3500 material, and we really have to work

23   extremely hard to prepare for a January 4th date.

24         MR. CECUTTI:  Judge, I'm in a very similar

25   situation.  I've got a trial scheduled, which involves more

PROCEEDINGS                                  16

1  discovery than I've never seen in my life.  We're starting on

2  November 1st, and it involves -- it's a Somali pirate case

3  that we will be preparing for up until and then we're

4  estimating a four- to five-week trial.

5          And then actually earlier in December, I'll start

6  jury selection for which my client has spent 20 years in

7  prison.  I can't explain why it took that long for it to be

8  reversed, but it was and is now pending again for trial, and

9  it's definitely going to go.  There's no question that that

10 trial will go as well.

11         I would also add, Your Honor, that just the

12 discovery that we've received thus far is seriously

13 voluminous.  And what we're going to be getting over the next,

14 I would say, four to eight weeks, as the government has

15 already described, is a tremendous amount of discovery when

16 we're going to be on trial in other complicated cases.  We

17 have motions to file.  There's just so much work to do.

18 January is really, under these circumstances --

19         THE COURT:  Well, let me ask you -- let me provide

20 an alternate date, since February is problematic.

21         March 6th?  And that would, again, we would be free

22 on that date as a backup date.

23         MR. MAZUREK:  Judge, on behalf of Mr. Zhang that

24 would be satisfactory.

25         MS. KELLMAN:  Your Honor, as to Mr. Abreu, I start a

PROCEEDINGS                                        17

1   trial the second -- the third week of February before

2   Judge DeArcy Hall.  It's also a murder case, and it's been

3   scheduled for then for quite some time, and I don't think

4   there'll be any moving of that date, and that's expected to be

5   approximately four weeks.

6                    THE COURT:  On what day?

7                    MS. KELLMAN:  I think it's the 17th.

8                    THE COURT:  Of what?

9                    MS. KELLMAN:  February.

10                   THE COURT:  Well, a lot of things can happen between

11  now and then.

12                   MS. KELLMAN:  I would say just, Judge, that that

13  date was scheduled over a year ago.

14                   THE COURT:  What is the possibility of a disposition

15  by your client?

16                   MS. KELLMAN:  Zero.  It's a 20-year old homicide,

17  Judge.  Twenty years old this week, in fact.

18                   THE COURT:  Well, the next open date would be

19  March 13th.

20                   Everybody has a problem, I can't, you know, not

21  schedule this trial, and I think the government's right, we

22  need to schedule a trial.

23                   Does March 13th work for everyone, except for

24  Ms. Kellman, who says she will be overworked by that time and

25  obviously --

PROCEEDINGS                                18

1            So, all right, hearing nothing, as they say, I'll

2    set the trial date down for March 13th.  That will be a firm

3    date.

4            MS. KELLMAN:  Judge, I may not be finished with my

5    trial by then.

6            THE COURT:  Well, as I say, things happen.  Life

7    goes on.

8            MR. CECUTTI:  Judge, I just don't want there to be

9    issues.

10           Is there a date, like a week -- if we can go a

11   little bit later so that Ms. Kellman can be done, because we

12   don't want to be in a position where Ms. Kellman's on trial

13   that -- and we're, you know, the trial calendar is booked

14   forever, we're looking to get --

15           THE COURT:  We can pick a jury in the middle of the

16   week the prior week and then, you know, I mean we can do that.

17           MS. KELLMAN:  I do have cocounsel in this matter,

18   Judge, and I can have my cocounsel work with the Court in

19   terms of jury selection.

20           THE COURT:  Okay.

21           MS. LASH:  Your Honor, given the expected length of

22   this trial, and I apologize, if we could even start with the

23   jury on the 13th.  Like I said, the government has a lengthy

24   trial starting in the beginning of April, and I want to be off

25   trial for that trial.

PROCEEDINGS                                        19

1            THE COURT:  All right, I'll leave it as the 13th and

2   we'll see what happens.

3            Ms. Kellman, alert us to any change in your trial

4   schedule well in advance of that.

5            MS. KELLMAN:  Of course, Your Honor.

6            THE COURT:  So we'll leave it for a jury selection

7   on the 13th, March 13th.

8            Now let me ask you, folks.  What grounds for the

9   exclusion of time between now and March 13th, the

10  unavailability of counsel to try the case?  I mean, I would be

11  perfectly happy to put this case down in November or December,

12  but counsel tell me that they're not available.

13           MS. KELLMAN:  I'm happy to do it then.

14           THE COURT:  Pardon me?

15           MS. KELLMAN:  I'm happy to do it then.

16           THE COURT:  When?

17           MS. KELLMAN:  November or December.

18           THE COURT:  Oh, okay.

19           Everyone happy to do it November or December?

20           MR. MAZUREK:  No.

21           MR. KAIZER:  I'd be happy to do it, I just can't.

22           THE COURT:  Well, you're also on the Somali pirate

23  case.

24           What I was going to exclude time was on the basis of

25  the unavailability of counsel in the case.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    20

1          Anyone disagree with that as an appropriate period

2   of excludable delay?  Any counsel disagree with that?

3          Mr. Kousouros?

4          MR. KOUSOUROS:  No, Judge.

5          THE COURT:  Ms. Kellman?

6          MS. KELLMAN:  Your Honor, we would object.  We're

7   available to try the case earlier, and we're prepared to do

8   that.

9          THE COURT:  Pardon me, when are you prepared to try

10  the case?

11         MS. KELLMAN:  November or December.

12         THE COURT:  So you object to the exclusion of time?

13         MS. KELLMAN:  Yes, Your Honor.

14         THE COURT:  But you do not question the good faith

15  of your cocounsel in saying that they're not available at that

16  time.

17         MS. KELLMAN:  Of course, not, Judge.

18         THE COURT:  Okay.

19         Ms. Harmati?

20         MS. HARMATI:  No objection, Your Honor.

21         THE COURT:  All right, I'm going to --

22         Does the government have an objection to excluding

23  time?

24         MS. LASH:  No, not on that basis, Your Honor.  We'd

25  also add that discovery is going to be produced and reviewed

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    21

1    for the defense to prepare for trial.  The possibility that

2    the parties can engage in plea negotiations.  And we'd also

3    ask if Your Honor could set pretrial, a supression motion

4    schedule, should the defense like to make any, that could also

5    serve as the basis for an exclusion.

6               MR. MAZUREK:  Judge, may I be heard on that.  Henry

7    Mazurek on behalf of Mr. Zhang.

8               I think with respect to a briefing schedule, it

9    would be a lot better, we still have not received any returns

10   from a search warrant that was executed at our client's house.

11   We would have a better sense of the time that we may need to

12   file motions, given that the trial date is not scheduled until

13   March.

14              THE COURT:  All right, I'll set a motion schedule at

15   the conference on September 23rd after people have had an

16   opportunity to review the material.

17              But understand it might not be a long time after --

18   the motion schedule might -- it could be months after that, so

19   be prepared to tell me what motions you want to file.  It's

20   important we complete that process.  March seems like a long

21   time away, but it isn't.  Complex issues arrive and need to be

22   resolved.

23              So the date that the parties were available was

24   September 23rd at?

25              THE COURTROOM DEPUTY:  10:30.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1          THE COURT:  10:30.  All right, I'll put it on for

2    that date and time.

3          I'll exclude time under the Speedy Trial Act until

4    the trial date of March 13th, based on the unavailability of

5    the majority of the counsel in this case to try the case.

6          Is there anything else that we need to take up

7    before we conclude?

8          MS. LASH:  Nothing from the government, Your Honor.

9    Thank you.

10         MR. KAIZER:  No, Your Honor.

11         MS. KELLMAN:  No, Your Honor.

12         THE COURT:  Okay.  Thank you, all very much.

13         And I'll ask the interpreter now, before everyone

14   goes, to collect the headphones while I wait here on the

15   bench.

16         (Pause in the proceedings.)

17         (Whereupon, the matter was concluded.)

18

19                    *    *    *    *    *

20
     I certify that the foregoing is a correct transcript from the
21   record of proceedings in the above-entitled matter.

22

23   s/ Linda D. Danelczyk              July 31, 2023

24     LINDA D. DANELCZYK                     DATE

25